# 2004 DTA 89

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGION JUDICIAL DE SAN JUAN**
**PANEL III**

SUIZA DAIRY CORPORATION
Demandante-Apelada

v.

UNION INSULAR DE TRABAJADORES INDUSTRIALES
Y CONSTRUCCIONES ELECTRICAS, INC.
Demandada-Apelante

Núm. KLAN-02-01344

San Juan, Puerto Rico, a 13 de abril de 2004

Panel integrado por su Presidente, el Juez Rafael Ortiz Carrión,
y los Jueces Antonio J. Negroni Cintrón y Jorge Segarra Olivero

Negroni Cintrón, Juez Ponente

### TEXTO COMPLETO DOE LA SENTENCIA

El 9 de diciembre de 2002, la Unión Insular de Trabajadores Industriales y Construcciones Eléctricas (UITICE), presentó un recurso de apelación para que revoquemos la *Sentencia* dictada el 1ro de noviembre de 2002 y notificada el 8 siguiente por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante ésta, el referido foro dejó sin efecto el Laudo Arbitral emitido por el Negociado de Conciliación y Arbitraje del Departamento del Trabajo (Negociado) el 21 de febrero de 2001, en relación con una controversia entre la UITICE y la Suiza Dairy Corporation (Suiza Dairy).

La Suiza Dairy presentó, en primer término, una moción para que desestimemos el recurso, aduciendo que el apéndice estaba incompleto. Posteriormente presentó su alegato. Atendemos, en primer término, la solicitud de

desestimación.

## I

La Suiza Dairy solicita la desestimación del recurso porque la UITICE no sometió con su recurso un apéndice completo. Conforme la Regla 16(E)(3) del Reglamento Transitorio del Tribunal de Apelaciones de 18 de noviembre de 2003, *"[l]a omisión de la presentación de documentos del Apéndice no será causa de desestimación del recurso."* Por consiguiente, denegamos la solicitud de desestimación.

Pasemos a considerar los méritos del recurso, exponiendo el trasfondo procesal del pertinente.

## II

Conforme la sentencia dictada por el TPI, el trasfondo procesal es el siguiente:

*"El 8 de octubre de 1999, la Suiza Dairy le cursó una comunicación escrita al señor William Santiago mediante la cual le notificó que lo estaban separando permanente e inmediatamente de empleo y sueldo por, alegadamente, haber adulterado la leche que transportó el día anterior. A través del señor Germán Zambrana, la UITICE le envió una carta al gerente de la Suiza Dairy el 19 de octubre y en la cual le solicitó una reunión el 27 siguiente para discutir ciertos asuntos, entre los cuales figuraba el despido de Santiago. Tres días más tarde, el gerente de la Suiza Dairy le contestó dicha carta e indicó que la reunión solicitada se celebraría el 28 de octubre. En esa fecha, la UITICE suspendió la reunión, al notar la presencia del abogado de la Suiza Dairy.*

*El próximo 2 de noviembre, un oficial de la UITICE envió otra carta al gerente de la Suiza Dairy en la que le explicó las razones detrás del retiro abrupto de los miembros de la UITICE de la pasada reunión y le solicitó que celebrara la misma el 5 de noviembre. El gerente de la Suiza Dairy contestó y señaló la reunión para el 9 de noviembre. A ésta, la UITICE no se presentó.*

*El 12 de noviembre, la UITICE le cursó una comunicación escrita al gerente de la Suiza Dairy en la que alegó que no se pudo concretar esa reunión, a pesar de todas las gestiones que había realizado para ello, y le solicitó que se llevara a cabo la reunión.*

*El 18 de noviembre, el gerente de la Suiza Dairy le envió una comunicación escrita a la UITICE indicándole que las gestiones a que se refería en su anterior carta las llevó a cabo la Suiza Dairy y no la UITICE, y le solicitó que se suscribiera a los procedimientos establecidos en el Convenio Colectivo entre ellos para la tramitación de cualquier asunto. La UITICE le contestó y le informó que no había asistido a la reunión por desconocer sobre la misma y solicitó, nuevamente, una reunión. Ésta fue pautada para el 9 de diciembre.*

*El día antes de la reunión pautada, la UITICE se comunicó con el gerente de la Suiza Dairy y le solicitó la suspensión de la reunión, debido a que su representante estaba enfermo. Indicó, también, que se comunicara con él para pautar la reunión. Así las cosas, la UITICE y la Suiza Dairy no realizaron más gestiones para reunirse.*

*Para esta fecha, la UITICE ya había presentado la querella ante el Negociado, para dilucidar su controversia. Como las partes no pudieron llegar a un acuerdo de sumisión, la árbitro estableció que el asunto a resolverse era **si la querella era arbitrable procesalmente** y, de serlo, si el despido estuvo justificado o no.*

*Luego de celebrar las vistas pertinentes y desfilada la prueba, el 21 de febrero de 2001, la árbitro encontró que la querella era arbitrable procesalmente, pues "si la Suiza Dairy estaba dispuesta a atender y resolver los asuntos, es porque consideró como una queja la carta del 19 de octubre de 1999 que la UITICE le envió al Gerente de Recursos Humanos."*

*Inconforme con dicha determinación, la Suiza Dairy recurrió ante el TPI e impugnó el laudo de arbitraje.*

*Levantó como errores que la árbitro determinara que la controversia era arbitrable procesalmente y que, por consiguiente, actuó contrario al Convenio Colectivo y el derecho aplicable, al hacer conjeturas y llegar a determinaciones y conclusiones de hecho contrarias a la prueba desfilada.*

*Oportunamente, el TPI determinó, en lo pertinente, que no se había cumplido con el procedimiento para la resolución de quejas y agravios, según pactado en el Convenio Colectivo. Expuso que la UITICE no cumplió con el término de cinco días para presentar su queja ante el Director de Recursos Humanos de la Suiza Dairy, pues la presentó después de vencido dicho término. Procedió así a revocar el laudo emitido por el Negociado."*

Insatisfecha con ese dictamen, la UITICE nos solicita que revoquemos la sentencia recurrida y que instauremos el laudo arbitral. La UITICE señala que dicho foro erró al resolver que la queja que presentara no era arbitrable por incumplir las disposiciones de término prescritas en el Artículo VIII del Convenio Colectivo pactado entre las partes. Sostiene que la verdadera razón por la cual la Suiza Dairy fundamentó sus alegaciones de inarbitrabilidad procesal es que la UITICE no había cumplido con el requisito de formalidad de la querella. Afirma que como ésta fue la única base de discusión sobre arbitrabilidad procesal, hablar de presentación tardía es improcedente, particularmente, cuando se levanta por primera vez en la petición de revisión ante el TPI.

Argumenta que el que la Suiza Dairy haya citado el término correcto de 5 días en la vista arbitral para así sustentar la desestimación de la querella, █ no es suficiente para que el TPI resolviera de la manera que lo hizo, pues la Suiza Dairy tenía que haberlo formulado y discutido como defensa afirmativa y no lo hizo. Alega, también, que en todo momento hubo comunicación continua entre las partes y que, por consiguiente, la Suiza Dairy renunció al planteamiento, aunque acepta que presentó la querella pasada la fecha límite para ello.

Por su parte, la Suiza Dairy sostiene que las alegaciones de la UITICE no proceden, pues no sólo se citó, leyó para récord y sometió el convenio correcto como evidencia en la vista arbitral, sino que, como dispuso el TPI, la Suiza Dairy levantó como defensa la inarbitrabilidad procesal ante el Negociado desde que tuvo la primera oportunidad para hacerlo, pues de lo contrario, la árbitro no hubiera entendido que una de las controversias ante sí era si la querella era arbitrable.

Argumenta que presentar una queja fuera del término acordado por las partes en el convenio necesariamente provoca la desestimación automática de dicha queja; que tampoco se cometió el segundo señalamiento de error, ya que el TPI nunca rechazó sus alegaciones imputándole a la árbitro haber actuado contrario al Convenio Colectivo al hacer conjeturas y llegar a determinaciones de hechos totalmente contrarias a la prueba desfilada ante ella y que, por el contrario, estas alegaciones versaban sobre los méritos del despido y el TPI nunca las solicitó, dada su determinación de que la queja fue presentada fuera de término.

### III

Examinados los alegatos de las partes, concluimos que la sentencia apelada es sustancialmente correcta y la adoptamos como nuestra. Debido a ello, pasamos a citarla *in extenso*:

"Corresponde a esta sala sentenciadora determinar inicialmente si se cometió el primer error alegado: *La árbitro erró al determinar que el presente caso era arbitrable procesalmente, según la prueba sometida.*

Nuestra ley decretó la negociación colectiva con la esperanza de que fuese un procedimiento conducente a la paz industrial. Art. 1 de la Ley de Relaciones del Trabajo de Puerto Rico, Ley Núm. 130 de 8 de mayo de 1945, 29 LPRA sec. 62. Los procedimientos de quejas y agravios y los comités constituidos para atender esos problemas tienen el propósito de que los mismos se resuelvan en forma ordenada y en sustitución de la conducta desordenada y del desastre de las huelgas. La ley reviste de interés público esos procedimientos y su propósito de eliminar en lo posible las disputas obreras. Art. 1 de la Ley Núm. 130 antes citada. *San Juan Mercantile Corp. v. J.R.T.,* 104 D.P.R. 86 (1975).

El Convenio Colectivo del Departamento de Transporte entre Suiza Dairy y la UTICE, vigente desde el 10 de junio de 1998 y con efectividad durante los 5 años subsiguientes, en su Artículo VIII dispone lo siguiente en cuanto a la resolución de quejas y agravios:

*"Toda queja o agravio de la Unión o de un empleado deberá ser presentada por escrito al Director de Recursos Humanos dentro de cinco (5) días laborables de la fecha en que ocurrieron los hechos que dan motivo a la queja; de no hacerse esto, se desestimará la queja.*

*1. El Director de Recursos Humanos le dará su contestación por escrito al delegado dentro de los siguientes diez (10) días calendario de habérsele presentado la queja por escrito.*

*2. Si la queja o agravio no es resuelta según el procedimiento anterior, la parte interesada deberá someter la querella al Negociado de Conciliación y Arbitraje del Departamento del Trabajo de Puerto Rico dentro de los diez (10) días calendario de recibida la contestación por parte de la Compañía.*

*El negociado le enviará a las partes una terna de árbitros y cada parte eliminará un nombre, y el árbitro restante será el árbitro designado para resolver dicha querella. La decisión del árbitro será final e inapelable, siempre que sea conforme a derecho.*

*Se entiende que cualquier decisión del árbitro tendrá que ser de acuerdo a las disposiciones del Convenio Colectivo y conforme a derecho.*

*La queja o agravio se considerará resuelta en contra de la parte que no cumpla con los términos aquí pactados para la resolución de las quejas."*

En el caso de autos no se cumplió con el procedimiento para la Resolución de Quejas y Agravios antes de recurrir al arbitraje. Veamos:

El Convenio Colectivo dispone que:

*"Toda queja o agravio de la Unión o de un empleado deberá ser presentada por escrito al Director de Recursos Humanos dentro de cinco (5) días laborables de la fecha en que ocurrieron los hechos que dan motivo a la queja; de no hacerse esto, se desestimará la queja."*

Los hechos que originan este caso se remontan al 8 de octubre de 1999, fecha en que se le entrega al Sr. William Santiago la carta de despido. La Unión presentó, con fecha del 19 de octubre, una carta dirigida al Gerente de Recursos Humanos de Suiza Dairy en la cual le solicita una reunión. El **[lunes, 18 de octubre de 1999]** era la fecha límite para la oportuna presentación de la queja o agravio. La Unión presentó la aludida carta (1) día después de vencido el término que dispone el Convenio Colectivo para la resolución de quejas y agravios.

Nuestro Tribunal Supremo ha dispuesto que los convenios colectivos representan la ley entre las partes, siempre y cuando sus disposiciones no estén reñidas con la ley, la moral y el orden público. *Pérez v. Autoridad Fuentes Fluviales*, 87 D.P.R. 118 (1963). Véase también *J.R.T. v. Vigilantes, Inc.,* 125 D.P.R. 258 (1961).

Es evidente que la UTICE no cumplió con el término prescrito en el Convenio Colectivo para la Resolución de Quejas y Agravios. El término dispuesto de 5 días en el Convenio fue excedido por **[un]** día adicional. Dispone el Convenio Colectivo que de no cumplirse con el término de los 5 días, se desestimará la queja.

Por otro lado, según han expresado Elkouri y Elkouri, los árbitros esperan que las partes cumplan con los requisitos del procedimiento de quejas y agravios como paso previo a su intervención. *"Arbitration awards show*

*that arbitrators expect the parties to pay do respect to the grievance procedure, not only by using it, but also by observing its formal requirements. Such respect is in the nature of a condition precedent'.*" Elkouri & Elkouri, *How Arbitration Works*, Fourth Edition, p. 198. Del mismo modo se expresan sobre la importancia del debido agotamiento de los remedios como condición previa al arbitraje. "*A party who refuses to comply or fails to comply properly with the negotiation steps of the grievance procedure will not be permitted to prevent arbitration on the ground that the grievance procedure has not been exhausted.*" Elkouri & Elkouri (*supra*), pág. 205.

En el caso de autos, se vio afectada la jurisdicción de la Árbitro cuando la parte querellante-recurrida **[la Unión]** no cumplió con el término de 5 días que dispone le Convenio Colectivo para la Resolución de Quejas y Agravios. Tampoco dicha parte presentó prueba a los efectos de que la parte querellada-recurrente **[la Unión]** tuvo la oportunidad de presentar sus defensas; luego de conocer que se había presentado una querella ante el Negociado de Conciliación y Arbitraje, expresó la defensa de inarbitrabilidad de la causa. Es por esa razón que la Árbitro entendió que una de las cuestiones a resolver era si la querella era arbitrable, luego de que las partes no llegaran a un acuerdo de sumisión.

El **[lunes, 18 de octubre]** era el último día para la presentación de la queja o agravio por el despido del Sr. William Santiago. El no haberlo hecho así produjo la desestimación automática de la queja y la consiguiente pérdida de jurisdicción del Negociado de Conciliación y Arbitraje sobre la misma.

Es crucial que todas las partes se ciñan a las disposiciones del Convenio Colectivo, cuando éste existe, de manera que pueda lograrse un saludable y armonios proceso interno para la resolución de las disputas en los centros de trabajo. Nuestro Tribunal Supremo ha expresado que:

"*Para que nuestro ordenamiento de derecho laboral esté informado por ese pensamiento consistente y sistemático al cual todo ordenamiento jurídico aspira, es necesario concluir que cuando existe un convenio colectivo y dicho convenio contiene cláusulas para el procesamiento de quejas y agravios y para su decisión o arbitraje, éstas deben ser observadas por todos los que intervienen en el campo de las relaciones obrero-patronales: los obreros, los patronos, las uniones, la Junta de Relaciones del Trabajo y los tribunales.*"

## IV

Por lo antes expuesto y por entender que la Sentencia emitida el 1ro de noviembre de 2002 es sustancialmente correcta, se confirma la misma.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIO 2004 DTA 89

**1.** Surge del expediente que la Suiza Dairy originalmente citó por equivocación un convenio colectivo diferente al aplicable en este caso y que provee un término de 10 días en vez de 5 días. No fue hasta que la árbitro hizo la corrección en la vista arbitral que la Suiza Dairy corrigió el error.